UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────

**OLUWAFEMI PHILIP ADEOSUN,**

    Plaintiff,

    v.                                          Case No. 24-CV-389-SCD

**JOSEPH NANTOMAH,**
**INVESTORS CAPITAL, LLC, and**
**GLOBAL INVESTORS CAPITAL, LLC,**

    Defendants.

───────────────────────────────────────────────

DECISION AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

───────────────────────────────────────────────

Oluwafemi Philip Adeosun invested $125,000 with Joseph Nantomah and Nantomah's LLCs with the agreement that he would receive back $173,000 a few months later. After Nantomah failed to repay Adeosun, Adeosun sued Nantomah and his businesses in federal court alleging claims for breach of contract, civil theft, fraud, and violations of federal and state securities laws. Adeosun has moved for summary judgment on all but one of his claims. The defendants have not responded. Based on Adeosun's undisputed facts, he is entitled to summary judgment on nearly all his claims.

## BACKGROUND

In accordance with local rules, *see* E.D. Wis. Civ. L. R. 56(b)(1)(C), Adeosun filed a statement of proposed facts along with his summary judgment motion, *see* Pl.'s Facts, ECF No. 25. I reminded the defendants that they needed to respond to Adeosun's proposed facts,

*see* Notice & Order, ECF No. 30 (citing E.D. Wis. Civ. L. R. 56(b)(2)), but they never did.[1] Thus, I will deem Adeosun's uncontroverted facts admitted for the purpose of deciding summary judgment. *See* E.D. Wis. Civ. L. R. 56(b)(4).

Adeosun, a New York resident, discovered Nantomah, then a Wisconsin resident, on Instagram in June 2023. *See* Pl.'s Facts ¶ 8. Nantomah solicited investors through social media, portraying himself as a successful house-flipping entrepreneur. *Id.* ¶¶ 8, 10–12. In fact, Nantomah had not completed "hundreds" of real estate deals nor made "millions" in profits as he claimed. *See id.* ¶¶ 4–7, 11.

In June 2023, Adeosun entered an investment agreement with Nantomah's investment company, Investors Capital, to invest $80,000 "only for the fixing and flip of property located at 3975 Fairfield Road, Slinger WI 53086." *Id.* ¶¶ 17–18. According to the agreement, Adeosun would receive back $96,000 eight months later. *Id.* ¶ 25. In September 2023, Adeosun signed a second agreement with Nantomah's other investment company, Global Investors Capital, investing $45,000 for fixing and flipping a property at 3622 N 37th St in Milwaukee. *Id.* ¶¶ 20–21. According to the second agreement, Adeosun would receive back $77,000 seven months later. *Id.*

When Adeosun didn't receive his first payment in February 2024, he sued Nantomah, Investors Capital, and Global Investors Capital, in federal court alleging seven causes of action. *See* Compl., ECF No. 1. The defendants filed an answer. *See* Answer, ECF No. 4. Adeosun filed an amended complaint, and the defendants filed an amended answer. Am. Compl., ECF No. 13; Am. Doc., ECF No. 14. In March 2025, I granted defense counsel's

---

[1] Adeosun was also supposed to remind Nantomah about the local rules and attach a copy of the relevant rules to his motion. *See* E.D. Wis. Civ. L. R. 56(a). I pointed out those requirements to Adeosun, *see* Text Only Order, ECF No. 28, but he didn't comply.

motion to withdraw from the case. *See* Minute Order, ECF No. 21. I haven't heard from any defendant since then.

The clerk of courts randomly assigned the matter to me, and the parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure. *See* ECF Nos. 5 & 6. On May 24, 2025, Adeosun moved for summary judgment. See Pl.'s Mot. for Summ. J., ECF No. 23; Pl.'s Br. in Supp., ECF No. 24. Adeosun filed a certificate of service via mail on June 18, 2025. ECF No. 29. Because the defendants did not have a lawyer, I attempted to explain to them the process and deadline for responding to Adeosun's motion. *See* Notice & Order, ECF No. 30. This order was returned as undeliverable to each defendant's address. ECF Nos. 31, 32, 33. Local rules require pro se litigants to provide the court their address and telephone number. *See* E.D. Wis. Gen. L. R. 5(a)(4). Nantomah has not provided an updated address, and the defendants have not responded to Adeosun's summary judgment motion.

## LEGAL STANDARD

Adeosun has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)).

3

## DISCUSSION

Adeosun moves for summary judgment on six of the seven claims asserted in the complaint: (I) breach of contract under common law; (II) civil theft under section 895.446 of Wisconsin statutes; (III) deceptive trade practices under section 100.18 of Wisconsin statutes; (IV) sale of an unregistered security under section 551.301 of Wisconsin statutes; (V) misstatement or omission in the sale of a security under section 551.501 of Wisconsin statutes; and (VI) sale of an unregistered security under Section 12(a)(1) of the Securities Act of 1933.

### I. Adeosun is entitled to partial summary judgment on his breach of contract claim.

Adeosun is entitled to summary judgment on his claim that Investors Capital breached the June 2023 investment agreement and Global Investors Capital breached the September 2023 investment agreement. Wisconsin substantive law applies to this diversity action.[2] *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019) (*citing Med. Protective Co. of Fort Wayne v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018)). To prevail on his breach of contract claim under Wisconsin law, Adeosun must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018). "Under Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration." *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (citing *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 20, 862 N.W.2d 879, 885).

---

[2] It is undisputed that Adeosun is a citizen of New York, that the defendants are citizens of Wisconsin, and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* Answer ¶¶ 1–4. Thus, subject matter jurisdiction is secure. *See* 28 U.S.C. § 1332.

First, the undisputed facts show the existence of two contracts, the first between Adeosun and Investors Capital, and the second between Adeosun and with Global Investors Capital. Nantomah signed the contracts as a member of the LLCs, but the facts do not show that Nantomah was a party to the contracts. *See* Adeosun Aff. Ex. A & B, ECF Nos. 26-1 & 26-2. Second, the undisputed facts establish that Investors Capital and Global Investors Capital breached the June 2023 investment agreement, as the defendants admitted that no payment had been made to Adeosun. *See* Am. Doc. ¶¶ 20, 28, 32. Third, the undisputed facts show that Adeosun was damaged by the breach—he's out $173,000. *See* Pl.'s Facts ¶ 30. Thus, Adeosun is entitled to summary judgment on his breach of contract claim as to Investors Capital and Global Investors Capital, but not as to Nantomah.

## II. Adeosun is entitled to summary judgment on his civil theft claim.

Adeosun's uncontroverted statements of material fact show that he is entitled to summary judgment on his civil theft claim. In Wisconsin, "[a]ny person who suffers damage or loss by reason of intentional conduct . . . that is prohibited under . . . 943.20 . . . has a cause of action against the person who caused the damage or loss." Wis. Stat. § 895.446(1). "Section 943.20 defines five modes of committing theft." *State v. Lopez*, 2019 WI 101, ¶ 17, 936 N.W.2d 125, 129. Here, Adeosun asserts a claim of civil theft under the second mode: theft of money by one in possession. *See* Pl.'s Br. 7–9 (citing Wis. Stat. § 943.20(1)(b)).

To prevail on his civil theft claim, Adeosun must prove, by a preponderance of the credible evidence, four elements. *See* Wis. Stat. § 895.446(2); § 943.20(1)(b); Wis. JI—Criminal 1444. First, Adeosun must show that the defendants had possession or custody of his money by virtue of the defendants' office, business, or employment or as trustee or bailee. Second, Adeosun must show that the defendants intentionally used or retained possession of the

5

money without Adeosun's consent and contrary to the defendants' authority. "The term 'intentionally' means that the defendant[s] must have had the mental purpose to use the money without [Adeosun's] consent and contrary to the defendant[s'] authority." Wis. JI—Criminal 1444. Third, Adeosun must show that the defendants knew that the use or retention of the money was without Adeosun's consent and contrary to the defendants' authority. Fourth, and finally, Adeosun must show that the defendants intended to convert the money to their own use. "Knowledge and intent must be found, if found at all, from the defendant[s'] acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge and intent." *Id.*

Adeosun had an ownership interest in the property allegedly stolen. "Under Wisconsin law, . . . civil theft require[s] the victim to have an ownership interest in the property converted or stolen." *Milwaukee Ctr. for Indep., Inc.*, 929 F.3d at 494 (citing § 895.446(1); § 943.20(1)(b); *H.A. Friend & Co. v. Pro. Stationery, Inc.*, 2006 WI App 141, ¶ 11, 720 N.W.2d 96, 100). "If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property." *Kentuckiana Healthcare, Inc. v. Fourth St. Sols., LLC*, 517 F.3d 446, 447 (7th Cir. 2008). However, an agreement that entitles someone to specific funds—rather than a "generic right to payment"—can create an ownership interest. *See Milwaukee Ctr. for Indep.*, 929 F.3d at 494–95.

Here, the undisputed facts show that Adeosun had an ownership interest in his investment funds. Adeosun did not have a generic right to payment; rather, he had a right to receive specific funds from investing in these properties. The agreements describe the defendants as "property managers" who will "source, inspect, [and] acquire" property. Adeosun Aff., Ex. A, at 1–2. The first agreement provided that Investors Capitol would

6

"commence partnership . . . only for the fix and flip of property located at 3985 Fairfield Road, Slinger WI 53086." *Id.* at 2. The second agreement provided that Global Investors Capitol would "commence partnership . . . only for the fixing and flip of [p]roperty located at 3622 N 37th Street Milwaukee WI 53216." Adeosun Aff., Ex. B at 2. These agreements entitled Adeosun to specific funds, therefore he had an ownership interest in this money.

The defendants had an independent duty to refrain from retaining or using investment funds without Adeosun's consent or authorization, *see Milwaukee Ctr. for Indep.*, 929 F.3d at 496–97 ("The duty to refrain from . . . stealing the BIRC Collections was entirely independent of the contract. It arose from the common law and Wisconsin statutes."). Adeosun consented to the defendants using his investment funds to renovate the Slinger and N 37th Street properties. Adeosun did not consent to the defendants retaining possession of funds beyond the repayment deadline, or the defendants using the funds for personal expenses and unrelated ventures. The undisputed facts therefore show that the defendants retained possession of and used Adeosun's money without his consent and contrary to the defendants' authority. *Cf. Bich v. WW3 LLC*, No. 20-C-1016, 2022 WL 18025219, 2022 U.S. Dist. LEXIS 233542, at *33–34 (E.D. Wis. Dec. 30, 2022) (dismissing a civil theft claim because the plaintiffs voluntarily loaned their money to the defendants and failed to allege that the defendants used that money for a purpose other than what they intended).

Lastly, Adeosun must also prove by a preponderance of the evidence that the defendants knowingly retained possession of or used the investment funds without Adeosun's consent, contrary to the defendants' authority, and with intent to convert the funds for their own use. "[T]he issue of intent is generally not readily susceptible of determination on summary judgment." *Id.* at 829 n.5. Some cases, however, contain "unrebutted evidence that

7

Case 2:24-cv-00389-SCD   Filed 11/14/25   Page 7 of 15   Document 34

the defendants acted with the requisite intent." *Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, 2019 U.S. Dist. LEXIS 35843, at *38 (E.D. Wis. Mar. 6, 2019) (citing *In re Kontrick*, 295 F.3d 724, 737 (7th Cir. 2002)). In fact, Wisconsin's theft statute "sets forth one acceptable method of proof: a defendant's refusal to pay a claim upon demand to one entitled to be paid out of trust funds is prima facie evidence of the defendant's intent to convert the trust funds to his own use." *Tri-Tech Corp.*, 646 N.W.2d at 829 (citing § 943.20(1)(b)).

Adeosun has presented prima facie evidence that the defendants in this case acted with specific criminal intent. Between February and April 2024, Adeosun contacted Nantomah via phone, email, and WhatsApp demanding payment. Pl.'s Facts, ¶ 28. The defendants did not pay back Adeosun's investment or promised return, instead using the investment funds for personal expenses and unrelated ventures. *Id.* ¶¶ 28–29, 44. Those uncontroverted facts are sufficient to establish the intent element of Wisconsin's criminal theft statute.

Because Adeosun has satisfied his burden on each element of section 943.20(1)(b), he is entitled to summary judgment on the civil theft claim under section 895.446.

**III.    Adeosun is entitled to summary judgment on his deceptive trade practices claim.**

Adeosun's uncontroverted statements of material fact show that he is entitled to summary judgment on his deceptive trade practices claim. Wisconsin's Deceptive Trade Practices Act "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 38, 677 N.W.2d 233, 244). To prevail on a claim under the Act, Adeosun must prove three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the

8

representation materially induced (caused) a pecuniary loss to the plaintiff." *Id.* (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 44, 749 N.W.2d 544, 553); *see also* Wis. Stat. § 100.18(1); Wis. JI—Civil 2418A.

The undisputed facts show that Nantomah made representations to the public with the intent to induce an obligation. Specifically, Nantomah actively promoted himself on social media as an experienced real estate investor and house flipper, claiming that he and his investment companies had an investment portfolio worth over $20 million. *See* Pl.'s Facts ¶¶ 8–10; *see also* Goodhart Decl., Ex. F & G. Those posts encouraged others to "take action" and "co invest" with Nantomah and his company. Goodhart Decl., Ex. F. In another social media post, Nantomah claimed that he had a property "on contract" for $665,000. *See* Goodhart Decl., Ex. J. Nantomah said that, after repairing the property, he expected to profit $131,000, and he urged others to "DM" him or email the LLC to get in on "this amazing deal." *Id.*

The undisputed facts also show that several of Nantomah's public representations were untrue, deceptive, or misleading. Nantomah significantly inflated the value of his investment portfolio. While he claimed to have real estate holdings worth over $20 million, in responding to Adeosun's requests for discovery, Nantomah listed only six properties held by his investment companies, which had a total value just over $650,000. *See* Goodhart Decl., Ex. I, ECF No. 27-9; *see also* Pl.'s Facts ¶¶ 4–7. In fact, Nantomah admitted in a similar lawsuit that, prior to 2023, his assets did not exceed $1 million. *See* Goodhart Decl., Ex. M, at 270:19–277:17, ECF No. 27-12; *see also* Pl.'s Facts ¶¶ 6–7. Nantomah's statements about the value of his real estate portfolio were not simple exaggerations. *See Tietsworth*, 2004 WI 32, ¶ 41, 677 N.W.2d at 245 ("Puffery has been defined as the exaggerations reasonably to be expected of

9

a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.") (citation modified). Rather, given their context, those statements appear designed to mislead potential investors into believing Nantomah was an experienced and highly successful real estate investor and house flipper.

That leaves the final element: whether Nantomah's statements materially induced a pecuniary loss to Adeosun. Wisconsin courts have endorsed "an expansive definition of pecuniary loss." *Tietsworth v. Harley-Davidson, Inc.*, 2003 WI App 75, ¶ 24, 661 N.W.2d 450, 455, *rev'd on other grounds*, 2004 WI 32, ¶¶ 38–45, 677 N.W.2d at 244–46; *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, ¶¶ 19–29, 859 N.W.2d 451, 458–60.

> In determining whether a plaintiff's loss was caused by the representation, the test is whether the plaintiff would have acted in its absence. Although the representation need not be the sole or only motivation for the plaintiff's decision to enter the contract, it must have been a material inducement. That is, the representation must have been a significant factor contributing to the plaintiff's decision.

Wis. JI—Civil 2418A (cleaned up and tailored to this case).

The undisputed facts show that Adeosun sustained a monetary loss as a result of Nantomah's misrepresentations about his investment portfolio. Adeosun asserts that he entered into the first investment agreement in reliance on Nantomah's representations, including his social media posts about his success in real estate. *See* Pl.'s Facts ¶¶ 8–16. Those uncontested facts demonstrate that Nantomah's misrepresentations materially induced Adeosun to invest in the defendants' real estate ventures. And that action resulted in Adeosun's monetary loss.

Because Adeosun has satisfied his burden on each element of section 100.18, he is entitled to summary judgment on his deceptive trade practices claim.

**IV. Adeosun is entitled to summary judgment on his state unregistered security claim.**

Adeosun's uncontroverted statements of material fact show that he is entitled to summary judgment on his state unregistered security claim. In Wisconsin, "it is unlawful to offer or sell a security unless it is a federally covered security, registered, or exempt from registration." *Toshner v. Goodman*, No. 18-CV-2005-BHL, 2024 WL 473616, at *9 (E.D. Wis. Feb. 7, 2024). "If the sale of a security violates Section 551.301, the purchaser may sue to recover the consideration paid for the security after subtracting any income received and the legal rate of interest." *Id.* (citation modified). The purchaser can also recover costs and attorney fees. *See* § 551.509(2)(a).

The Wisconsin Uniform Securities Act "provides an extensive definition of 'security.'" *State v. Hudson*, 2013 WI App 120, ¶ 4, 839 N.W.2d 147, 151 (quoting Wis. JI—Criminal 2904, cmt. 1). Under the Act, an "investment contract" is a "security." Wis. Stat. § 551.102(28). More specifically, a "security" includes "[a]n investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor." Wis. Stat. § 551.102(28)(d)(1). The Act defines a "common enterprise" as "an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party." *Id.*

The investment opportunity the defendants offered and sold to Adeosun qualifies as a security under Wisconsin law. According to the agreements, the defendants offered Adeosun opportunities to contribute money to flip specific real estate properties for a profit and promised a high rate of return. *See* Adeosun Aff., Ex. A & B. Thus, the investment offerings constitute an investment in a common enterprise under Wisconsin securities law. *See, e.g.*, *State v. Johnson*, 2002 WI App 224, ¶¶ 10–19, 652 N.W.2d 642, 645–48 (finding that an investment

11

Case 2:24-cv-00389-SCD    Filed 11/14/25    Page 11 of 15    Document 34

offering qualified as a security under Wisconsin law where a defendant solicited loans for his business and promised a high rate of return).

The undisputed facts show that the investment opportunity the defendants offered and sold to Adeosun were not registered under Wisconsin law, and there's no evidence to suggest that the agreement was a federally covered security or was exempt from registration. In their answer and their discovery responses, the defendants admitted that the investment agreement was not registered with the SEC or any state regulatory agency. *See* Goodhart Decl., Ex. E, at 12–13. Because the agreement was unregistered, to avoid liability under section 551.301, the defendants must prove that the agreement was exempt from registration. *See State v. Torgerson*, No. 2016AP411-CR, 2017 WL 3037549, 2017 Wisc. App. LEXIS 530, at *9–10 (Wis. Ct. App. July 18, 2017). The defendants have never claimed that the agreement was exempt from registration under Wisconsin securities law. *See* Pl.'s Facts ¶¶ 33, 38. And the defendants have not responded to Adeosun's motion or proposed facts.

Because Adeosun has proven that the defendants offered and sold him unregistered securities, and because there's no evidence the securities were federally covered or exempt from registration, Adeosun is entitled to summary judgment on his unregistered securities claim under the Wisconsin Uniform Securities Act.

V. **Adeosun is entitled to summary judgment on his state securities fraud claim.**

"Section 551.501 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security to 'make an untrue statement of a material fact,' or to omit a material fact that would have made a statement not misleading." *Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (quoting § 551.501(2)). If the sale of a security violates section 551.501(2), the seller is liable to the purchaser if "the purchaser did not know the untruth or omission and

12

Case 2:24-cv-00389-SCD   Filed 11/14/25   Page 12 of 15   Document 34

the seller cannot sustain the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission." Wis. Stat. § 551.509(2). The purchaser, however, does not need to prove that the seller intended to defraud. *See Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (citing *In re Butler*, No. 17-22141-svk, 2017 WL 5151678, 2017 Bankr. LEXIS 3835, at *19–20 (Bankr. E.D. Wis. Nov. 6, 2017)).

Adeosun is entitled to summary judgment on his state securities fraud claim. The undisputed facts show that the defendants, in connection with the offer and sale of the investment opportunities, willfully made untrue statements about the value of their real estate portfolio. Those statements were material, as the value of the overall investment portfolio could be expected to influence a reasonable investor in deciding to invest, and Adeosun says it did. *See* Pl.'s Facts ¶¶ 8–16. Adeosun did not know that the defendants had significantly inflated the value of their real estate holdings, and if he had, he would not have invested. *See* Adeosun Aff. ¶¶ 8–16, 41. Together, the defendants' discovery responses (*see* Ex. E, at 8–9), information Adeosun learned from his own investigation (*see* Ex. L), and Nantomah's sworn testimony about his wealth (*see* Ex. M, at 270:19–277:17) demonstrate that the defendants knew or should have known that their statements about their real estate portfolio were untrue.

## VI.   Adeosun is not entitled to summary judgment on his federal unregistered securities claim.

Section 5 of the Securities Act of 1933 "provides that no securities may be sold in or by means of interstate commerce unless a registration statement is in effect or some exemption applies." *United States v. Spirk*, 503 F.3d 619, 620 (7th Cir. 2007) (citing 15 U.S.C. § 77e). Just as in Wisconsin, an "investment contract" constitutes a "security" under the federal Securities Act. *See* 15 U.S.C. § 77b(a)(1). Also like Wisconsin law, federal law defines an investment contract as "a contract, transaction or scheme whereby a person invests his money in a

13

common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) (quoting *S.E.C. v. Howey Co.*, 328 U.S. 293, 299 (1946)). However, the federal Securities Act deviates from the Wisconsin Uniform Securities Act in one key respect, at least as the federal Act has been interpreted by the Seventh Circuit. "This Circuit has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." *Id.* (citing *Hirk v. Agri-Rsch. Council, Inc.*, 561 F.2d 96 (7th Cir. 1977); *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972)); *cf. Johnson*, 2002 WI App 224, ¶ 17, 652 N.W.2d at 647 (explaining that "proof of horizontal commonality is not required in order to have the solicitation to loan money involve a security within the meaning of ch. 551").

Adeosun has failed to prove that this investment opportunity constitutes a security under federal law. He does not provide any facts suggesting that multiple investors pooled their funds or were entitled to receive profits. Because Adeosun has failed to demonstrate that the investment agreement involved a common enterprise, he is not entitled to summary judgment on his unregistered securities claim under the Securities Act of 1933. *See Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 465 (7th Cir. 2014) (affirming summary judgment in favor of defendants because the plaintiffs failed to show that a purchase agreement involved a common enterprise); *Okeke v. Nantomah*, No. 25-cv-36-pp, 2025 WL 2494024, 2025 U.S. Dist. LEXIS 168717, *16–18 (E.D. Wis. Aug. 29, 2025) (denying default judgment on unregistered securities claim under federal law because the complaint failed to allege that any other investors—beside the plaintiff—contributed funds or were entitled to receive profits).

**CONCLUSION**

Adeosun lost over $125,000 investing in Nantomah's Ponzi scheme, and the undisputed facts in this action demonstrate that Nantomah and his LLCs are on the hook for that money under several theories of liability. Accordingly, for all the foregoing reasons, the court **GRANTS in part** and **DENIES in part** the plaintiff's motion for summary judgment, ECF No. 23. Adeosun is entitled to summary judgment on his breach of contract claim against Investors Capital LLC and Global Investors Capital LLC, his civil theft claim, his deceptive trade practices claim, his state unregistered security claim, and his state securities fraud claim. However, Adeosun is not entitled to summary judgment on his breach of contract claim against Nantomah or his federal unregistered securities claim.

**SO ORDERED** this 14th day of November, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge